**Robert HOLLMAN and Darlene Hollman, Appellants,**

**v.**

**LIBERTY MUTUAL INSURANCE CO., a corporation, Appellee.**

**Robert HOLLMAN and Darlene Hollman, Appellants,**

**v.**

**DALE ELECTRONICS, INC., Appellee.**

**No. 82–2043.**

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1983.

Decided July 28, 1983.

Rehearing Denied Aug. 30, 1983.

Steven M. Johnson, Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, S.D., Murray Ogborn, Nelson & Harding, Lincoln, Neb., for appellants.

James E. Doyle, Doyle, Bierle, Porter & Kennedy, Yankton, S.D., for appellee, Dale Electronics, Inc.

Woods, Fuller, Shultz & Smith P.C., and Arlo Sommervold and Gary P. Thimsen, Sioux Falls, S.D., for appellee, Liberty Mut. Ins. Co.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

LAY, Chief Judge.

This is a diversity suit based on a claim of damages for alleged bad faith exercised by plaintiff's employer and its worker's compensation carrier for failure to pay benefits on a work related claim. The district court held the South Dakota Worker's Compensation Act provided the exclusive remedy and granted summary judgment in favor of the

defendants. The plaintiffs, Darlene Hollman and Robert Hollman, appeal. We reverse the grant of summary judgment and remand to the district court for further proceedings.

Darlene Hollman was employed by Dale Electronics, an electronics manufacturing company, located in Yankton, South Dakota. She had been employed approximately four years when she began to develop headaches, breathing problems and nausea. An allergy specialist, Dr. John Argabrite, after extensive testing, recommended that she quit work as her condition had severely worsened and was becoming permanent. Dr. Argabrite concluded that the primary chemical causing Mrs. Hollman's condition was "toulene di isocyanate" (TDI).

Mrs. Hollman reported her injury to Dale Electronics in August 1977. Dale Electronics contacted Liberty, its worker's compensation insurer. On September 3, 1977, Liberty informed Mrs. Hollman that the condition was "wholly foreign to employment." She thereafter filed a worker's compensation claim.

The Hollmans continually contacted Liberty concerning the claim but at best were treated with indifference. Until this lawsuit in federal district court was commenced, reports about the chemicals were withheld, labels with warnings of isocyanates and directions on ventilation were not revealed, and a list of persons who previously had reactions was not furnished. The continuing interrogatories indicated that no TDI existed at the Yankton plant.[1]

Mrs. Hollman was eventually awarded worker's compensation by the Director of the Department of Labor. Liberty appealed this decision to the circuit court of Yankton County which affirmed the award of benefits. Liberty then decided to appeal to the South Dakota Supreme Court, but before doing so, received this memo from its home office legal department:

It is even difficult to see how we could fairly employ appeal as settlement leverage. This case should be paid or settled. Appeal is not authorized.

Later that day Liberty's home office notified the Minneapolis branch as follows:

HO legal says we have no basis for appeal, I agree, I authorized settlement to $50,000.00. If case does not settle, you will withdraw the appeal and pay per award.

Notwithstanding these directives, Liberty filed an appeal with the South Dakota Supreme Court. No briefs were ever filed, and finally, on December 7, 1979, the Supreme Court dismissed the appeal. In January 1980, Mrs. Hollman received her worker's compensation benefits that had been previously awarded. Because there had been such a delay, and since both she and her husband were totally disabled and without funds (a fact known by Liberty and Dale Electronics), Mrs. Hollman requested a lump sum distribution. This request was contested by Liberty on the grounds that it would not benefit the employee, although no basis was given for such an assertion. The Director ordered a lump sum payment to Mrs. Hollman.

The Hollmans then sued Dale Electronics and Liberty in United States District Court. Their amended complaint alleged a conspiracy and refusal to disclose information on toxic chemicals, the nature of conducted tests, harassment and coercion, misrepresentations, unjustifiable denial of benefits, and refusal to pay. In essence, she sued for intentional, malicious and fraudulent actions which occurred after her employment and during the pendency of her claim. She requested compensatory, punitive and exemplary damages.

The district court granted Liberty's motion for summary judgment on the basis that Mrs. Hollman's exclusive remedy existed under section 62–8–6 of the South Dakota Worker's Compensation Act.[2] Mrs. Holl-

---

1. At a later date OSHA confirmed the presence of TDI in the Dale Electronics Yankton plant.

2. S.D. Codified Laws Ann. § 62–8–6 (1978) states:

Employers and workers subject to chapter—Security for compensation—Right to compensation as exclusive remedy. Every employer of workers subject to the worker's

man urges that her claim is for the intentional tort of the insurer and not for any injury covered by the worker's compensation laws. The district court held that Mrs. Hollman's only additional remedies were for attorney fees in accord with S.D. Codified Laws Ann. § 58–12–3 (1978).[3] The issue on appeal is whether a worker who is covered under the South Dakota Worker's Compensation Act may assert a separate claim in the courts for intentional torts which occurred after employment ceased and during the processing and payment of the claim.

■ South Dakota case law and legislative history offer no direct guidance. We also note that it is well settled in our circuit that this court will give deference to a district court's interpretation of state law, unless, of course, we find the district court has not correctly interpreted the state statutes or properly applied local law. *Red Lobster Inns of America, Inc. v. Lawyers Title Insurance Corp.,* 656 F.2d 381, 387 (8th Cir.1981); *Bazzano v. Rockwell International Corp.,* 579 F.2d 465, 469 (8th Cir.1978); *Harris v. Hercules, Inc.,* 455 F.2d 267, 269 (8th Cir.1972). *Cf. Luke v. American Family Mutual Insurance Co.,* 476 F.2d 1015, 1019 (8th Cir.), *cert. denied,* 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973).

We agree that section 62–8–6 sets forth the exclusive remedy "on account of any disease or injury to health." However, this language does not involve torts which occur independent of the industrial injury. In the present case we conclude plaintiffs' cause of action is implicitly recognized within the South Dakota statutes. Section 58–12–3 provides that a grant of attorney fees "shall not be construed to bar any other remedy, whether in tort ... arising out of its refusal to pay such loss." This clause coupled with the language in the title "[o]ther remedies not barred" strongly suggests that the legislature did not intend to bar an action for intentional torts independent of the party's claim for worker's compensation.[4]

Similar results have been reached by other state courts addressing the same or similar issues. In *Coleman v. American Universal Insurance Co.,* 86 Wis.2d 615, 273 N.W.2d 220 (1979), the insurer was sued for bad faith, refusal to pay the claim, and intentional infliction of emotional distress.

---

compensation law shall be subject to the provisions of this chapter, and shall secure the payment of compensation in accordance with the provisions of this chapter by any method prescribed by the worker's compensation law at the time in effect in this state. Where the foregoing requirement is complied with, the liability of the employer under this chapter shall be exclusive, and shall be in place of any and all other civil liability whatsoever, at common law or otherwise to such employee, or to his spouse, children, parents, dependents, next of kin, personal representatives, guardian, or any others on account of any disease or injury to health, or on account of death from any disease or injury to health in any way contracted, sustained, aggravated, or incurred by such employee in the course of, or because of, or arising out of his employment, except only an injury compensable as an injury by accident under the provisions of the worker's compensation law.

3. S.D. Codified Law Ann. § 58–12–3 (1978) reads as follows:

Attorney fees—Recovery in action against insurer failing to pay loss—Other remedies not barred. In all actions or proceedings hereafter commenced against any insurance company, including any reciprocal or interinsurance exchange, on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the department of labor, the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs, provided, however, that when a tender is made by such insurance company or exchange before the commencement of the action or proceeding in which judgment or an award is rendered and the amount recovered is not in excess of such tender, no such costs shall be allowed. *The allowance of attorney fees hereunder shall not be construed to bar any other remedy, whether in tort or contract, that an insured may have against the same insurance company arising out of its refusal to pay such loss.* (Emphasis added).

4. Plaintiffs argue section 62–3–2 provides an exception for intentional torts. This language however refers to rights and remedies under the Worker's Compensation Act and relates to injuries incurred during the employment.

The court held that these were separate torts not encompassed under the exclusivity provisions of the worker's compensation laws. *Id.* 273 N.W.2d at 221. The weight of the case law clearly supports causes of action for such intentional torts and does not recognize exclusivity provisions of worker's compensation statutes to be a bar to the action.[5] As Professor Larson stated:

> If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, the action should be barred even if it can be cast in the form of a normally non-physical tort.

2A Larson, *Workmen's Compensation Law* § 68.34, at 13.31–32 (1976).

While we recognize that some jurisdictions have declined to allow a separate action for such intentional torts,[6] we do not find their reasoning persuasive. We find that the South Dakota statutes permit the Hollmans to bring this claim in state court;[7] as indicated, the South Dakota compensation laws reflect recognition of this cause of action.[8]

 We hold that the Hollmans stated a cause of action for an intentional tort which occurred after the employment ceased under South Dakota law; we find the action is not barred by the exclusivity provision of section 62–8–6 of the South Dakota Codified Laws.

We therefore vacate the grant of the summary judgment in favor of the defendants and reverse and remand for further proceedings not inconsistent with this opinion.

---

**5.** *See Reed v. Hartford Accident & Indemnity Co.,* 367 F.Supp. 134, 135 (E.D.Pa.1973) (action for intentional torts not barred); *Dorr v. C.B. Johnson, Inc.,* 660 P.2d 517, 520 (Colo.App. 1983) (worker's compensation is not exclusive remedy where conduct occurs *after* a compensable injury); *Gibson v. National Ben Franklin Ins. Co.,* 387 A.2d 220 (Me.1978) (severe mental distress did not arise out of or in the course of employment and thus claim not barred by the exclusivity provisions of the compensation laws); *Broaddus v. Ferndale Fastener Division,* 84 Mich.App. 593, 269 N.W.2d 689 (1978) (suit against employer and worker's compensation carrier not barred by exclusivity provision, where essence of tort and damage was not physical); *Hayes v. Aetna Fire Underwriters,* 609 P.2d 257 (Mont.1980) (employers and insurance carriers not permitted to use compensation exclusivity provisions as a *shield* for committing intentional torts). *See also* Annot., 8 A.L.R. 4th 902 (1981).

**6.** *Chavez v. Kennecott Copper Corp.,* 547 F.2d 541 (10th Cir.1977) (interpreting New Mexico law); *Escobedo v. American Employers Insurance Co.,* 547 F.2d 544 (10th Cir.1977) (following *Chavez*); *Everfield v. State Compensation Insurance Fund,* 115 Cal.App.3d 15, 171 Cal. Rptr. 164 (1981). *See generally* Annot., 8 A.L.R. 4th 902 (1981); Annot., 9 A.L.R. 4th 778 (1981).

**7.** Counsel for Liberty Mutual contends that the cases *VerBouwens v. Hamm Wood Products,* 334 N.W.2d 874 (S.D.1983) and *Shearer v. Homestake Mining Co.,* 557 F.Supp. 549 (D.S. D.1983) are expressions of the South Dakota Supreme Court and the United States District Court for the District of South Dakota on this issue. We disagree. The *VerBouwens* case dealt with an alleged intentional tort, wanton and willful misconduct, that occurred during the employment. In the *Shearer* case, the employee's representatives brought a wrongful death action alleging the employer created extremely hazardous and dangerous working conditions, again during the course of employment. The district court would have permitted an action for intentional torts under the South Dakota statutes had the evidence shown the employer consciously committed these acts. It is clear that both of these cases occurred in the course of employment and are thus distinguishable from the case at hand.

**8.** The final issue addressed by the parties is whether exemplary and punitive damages are recoverable by the Hollmans under South Dakota law. It is not necessary at this time to address that issue.